## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DERMTECH, INC., *et al.*,[1] | Case No. 24-11378 ([___]) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY
### OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
### DEBTORS TO (A) PAY PREPETITION WAGES, EMPLOYEE
### BENEFITS OBLIGATIONS, AND OTHER COMPENSATION, AND
### (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED
### ADMINISTRATIVE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF

DermTech, Inc. and DermTech Operations, Inc. (each, a "Debtor" and collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases, by and through their undersigned proposed counsel, hereby submit this motion (this "Motion") for entry of interim and final orders granting the relief described below. In support hereof, the Debtors rely on the *Declaration of Bret Christensen, President and Chief Executive Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] filed concurrently herewith, and further represent as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: DermTech, Inc. (0849) and DermTech Operations, Inc. (8997). The Debtors' service address is 12340 El Camino Real, San Diego, California 92130.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

**RELIEF REQUESTED**

4.      The Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"):  (i) authorizing, but not directing, the Debtors, in their discretion, to (a) pay Prepetition Employee Obligations (defined below) and related expenses arising under or related to Compensation and Benefits Programs (defined below) and (b) continue their Compensation and Benefits Programs in effect as of the Petition Date (as defined below) (and as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time and in the ordinary course of business) and pay related administrative obligations; and (ii) granting related relief.

5.      The Debtors further request entry of an order:  (a) authorizing all applicable banks and other financial institutions (collectively, the "Banks"), when requested by the Debtors in their

discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers, on account of the Prepetition Employee Obligations (defined below), whether such checks or other requests were submitted before, on, or after the Petition Date; (b) authorizing the Banks to rely on the representations of the Debtors as to which checks and payments are subject to this Motion; (c) providing that the Banks shall, at the discretion of the Debtors, receive, process, honor, and pay all prepetition and post-petition checks and fund transfers on account of the Prepetition Employee Obligations that had not been honored and paid as of the Petition Date; (d) prohibiting the Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for the Prepetition Employee Obligations; and (e) authorizing the Debtors to issue new post-petition checks or effect new post-petition fund transfers to replace any checks, drafts, and other forms of payment which may be inadvertently dishonored or rejected.

## **BACKGROUND**

6.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

7.      The Debtors are a molecular diagnostic company that develops and markets novel non-invasive genomics tests to aid in the evaluation and management of melanoma. The Debtors' flagship product is their DermTech Melanoma Test™ (the "DMT"), a laboratory developed

scalable genomics assay to clinically assess pigmented skin lesions for melanoma using non-invasive collection of patient samples using adhesive patches known as the DermTech Smart Sticker™ (together with the DMT and the Debtors' assays, the "Products"). In contrast to the existing standard of care of using a scalpel to biopsy suspicious lesions, the Products provide an objective, non-invasive, higher negative predictive value, and lower cost means of assessing pigmented lesions suspicious of melanoma and guiding the clinician's decision of whether to biopsy. The DMT has been demonstrated to rule out melanoma with a negative predictive value of 99%. The DMT is performed in the Debtors' molecular laboratory in San Diego, California. The Debtors also provide research laboratory services to several pharmaceutical companies which access the Debtors' technology on a contract basis to further clinical trials and studies related to other skin diseases and to measure the response of drugs under development.

8.     Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and incorporated herein by reference.

## THE DEBTORS' WORKFORCE

9.     As of the Petition Date, the Debtors employ a workforce of approximately 61 individuals, on a full-time basis (the "Employees"). None of the Employees are represented by a union or employed pursuant to a collective bargaining agreement.

10.     The Employees are vital to the Debtors' efforts to successfully prosecute these chapter 11 cases, as described in greater detail in the First Day Declaration. The Employees perform a wide variety of clinical, medical, laboratory, finance, legal, administrative, and other functions that are critical to the Debtors' operations. In many instances, the Employees are highly

skilled personnel intimately familiar with the Debtors' products, processes, systems, and regulatory obligations, many of which are highly technical and require specialized training and experience. Without the continued, uninterrupted services of the Employees, the ability of the Debtors to maintain and administer their estates will be materially impaired.

11.     As of the Petition Date, the Debtors have also retained one independent contractor (the "Independent Contractor"). The Independent Contractors is also critical to the Debtors' operations and support the efforts of the Employees.

## EMPLOYEE COMPENSATION AND BENEFITS

12.     Like many similarly-situated companies, the Debtors maintain certain compensation and benefits programs and pay various administrative fees and insurance premiums in connection therewith (collectively, the "Employee Compensation and Benefits"), including the following (each as defined below): Wage Obligations, Independent Contractor Obligations, Withholding and Deduction Obligations, Employer Payroll Taxes, Reimbursable Expenses, PTO, Health and Welfare Coverage and Benefits, the Workers' Compensation Program, the 401(k) Plan, Other Benefits, the Personal Mobile Phone and Internet Reimbursement, the Employee Administration Service Providers, and certain other benefits that the Debtors provide in the ordinary course of business.

13.     The Debtors estimate that, as of the Petition Date, there are amounts accrued under or related to the Employee Compensation and Benefits (such amounts, the "Prepetition Employee Obligations"), which the Debtors estimate to be approximately $810,000. Of this amount, approximately $405,000 will become due and payable during the Interim Period (the "Interim Caps").

| Prepetition Employee Obligation | Interim Caps | Final Amounts |
|---|---|---|
| Compensation, Withholding and Deductions, and Expense Reimbursement | | |
| Wage Obligations | $50,000 | $50,000 |
| Independent Contractor Obligations | $0.00 | $30,000 |
| Withholding and Deduction Obligations | $20,000 | $20,000 |
| Employer Payroll Taxes | $5,000 | $5,000 |
| Reimbursable Expenses | $20,000 | $20,000 |
| PTO | $250,000 | $600,000 |
| Health and Welfare Coverage and Benefits | | |
| Personal Mobile Phone and Internet Reimbursement | $40,000 | $40,000 |
| Incentive Compensation, Bonuses and Employee Stock Purchase Plan | | |
| Retention Bonus Program | $0.00 | $25,000 |
| Wage, Benefit, and Employee Management Service Providers | | |
| Wage, Benefit, and Employee Management Service Providers | $20,000 | $20,000 |
| **TOTAL** | **$405,000** | **$810,000** |

14.     The descriptions of the Employee Compensation and Benefits set forth in this Motion constitute a summary only. The actual terms of the agreements, contracts, plans, programs, and manuals governing the Employee Compensation and Benefits will govern in the event of any inconsistency with the descriptions in this Motion. The Debtors request authority to honor obligations related to the Employee Compensation and Benefits in the ordinary course of business consistent with prepetition practices, regardless of whether the Debtors inadvertently fail to include a particular benefit or aspect of compensation in the defined term "Employee Compensation and Benefits," and any such omitted benefit or aspect of compensation is hereby included in the defined term "Employee Compensation and Benefits" as used herein and in the Proposed Orders.

15.     The Employees and the Independent Contractor rely on their compensation and benefits to pay their daily living expenses. These individuals and their families could experience

significant hardship if the Court does not permit the Debtors to honor prepetition obligations that may be outstanding as of the Petition Date in connection with the Employee Compensation and Benefits (and to continue paying the Employee Compensation and Benefits on a post-petition basis), particularly in light of inflation and other macroeconomic pressures. Further, the Debtors' failure to honor their prepetition and post-petition obligations in connection with the Employee Compensation and Benefits could cause attrition that would severely impact the administration of these chapter 11 cases, and the Debtors' efforts to maximize the value of their assets.

16.     The Debtors seek to minimize the personal hardship that Employees and the Independent Contractor would suffer if the Prepetition Employee Obligations were not paid or remitted when due or as expected. The Debtors, therefore, seek authorization, but not direction, to (a) pay and honor the Prepetition Employee Obligations, consistent with the manner summarized in the chart above and described in greater detail below; and (b) continue to honor or elect to modify, change, and/or discontinue obligations related to or on account of the Employee Compensation and Benefits in the ordinary course of business in the Debtors' sole discretion and without the need for further Court approval, subject to applicable law.

**I.      Compensation, Withholding and Deduction, and Expense Reimbursement**

**A.      Wage Obligations**

17.     In the ordinary course, the Debtors incur payroll obligations for base wages and salaries owed to Employees (the "<u>Wage Obligations</u>"). Employees are paid on a semi-monthly basis, one week in arrears from the pay period end date, or the nearest business day if the pay date falls on a weekend.  Three (3) days before each pay date, the Debtors fund the Wage Obligations to the payroll processor, ADP, whereby ADP debits the necessary funds from the Debtors' accounts to process payroll.

18.     The Debtors' most recent payroll was paid on June 17, 2024, in the amount of approximately $400,000 and includes funds for all base wages and salaries due through June 15, 2024. The Debtors' next payroll (for the period ending June 30, 2024) will be paid on July 5, 2024.

19.     As of the Petition Date, the Debtors estimate that they owe approximately $50,000 on account of accrued but unpaid Wage Obligations (the "Unpaid Wage Obligations"), all which will become due and owing during the Interim Period.

20.     The Debtors seek authorization, but not direction, to continue to satisfy amounts incurred on account of the Wage Obligations (including the Unpaid Wage Obligations) in the ordinary course of business on a post-petition basis. As of the Petition Date, the Debtors do not believe that the amount due and owing to any Employee on account of Wage Obligations together with any Prepetition Employee Obligations will exceed the statutory cap of $15,150 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, except where the excess is a result of accrued but unpaid PTO that is required to be paid under applicable nonbankruptcy law.

### B.     Independent Contractor Obligations

21.     The Employees and the Independent Contractor work side by side with respect to many of the Debtors' business operations. The Independent Contractor is paid monthly in arrears. As of the Petition Date, no amounts are accrued and outstanding with respect to the Independent Contractor's services rendered prior to June 2024. However, on July 31, 2024, the Independent Contractor's June invoice will become due and payable, approximately $20,000, which amount covers the prepetition period in June 2024. The Debtors request authorization to pay this amount pursuant to entry of the Final Order.

**C.      Non-Employee Director Compensation (Final Order Only)**

22.      As of the Petition Date, the board of directors (the "Board") of Debtor DermTech, Inc. includes six (6) non-Employee individuals who serve as directors for the Debtors (the "Non-Employee Directors"). The Non-Employee Directors are paid approximately $92,000 in the aggregate (i.e., approximately $15,300.00 per Non-Employee Director) quarterly in advance plus reimbursable travel expenses, as compensation for serving on the Board and various committees thereof (the "Non-Employee Director Compensation"). As of the Petition Date, the Debtors do not believe that they owe any amounts on account of Non-Employee Director Compensation and believe that they are authorized to pay any post-petition Non-Employee Director Compensation in the ordinary course. However, out of an abundance of caution, by this Motion, the Debtors seek authority to continue to pay the Non-Employee Director Compensation on a post-petition basis in the ordinary course and consistent with their prepetition practices.

**D.      Withholding and Deduction Obligations**

23.      Certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes for remittance to the appropriate federal, state, or local taxing authorities or as required by statute including for garnishments, child support, and Social Security and Medicare taxes (the "Withholding Obligations").

24.      The Debtors also routinely deduct certain amount from Employees' paychecks, including pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums, 401(k) contributions, and miscellaneous deductions (collectively, the "Deductions," and together

with the Withholding Obligations, the "<u>Withholding and Deduction Obligations</u>") and forward such amounts to various third-party recipients.

25.    As of the Petition Date, the Debtors believe that they have deducted but not yet remitted to the appropriate third-party payees approximately $20,000 in Withholding and Deduction Obligations, all of which must be remitted during the Interim Period.

26.    Any amounts held by the Debtors on account of the Withholding and Deduction Obligations generally are held in trust by the Debtors and are not property of the estates. As such, the Debtors do not need authorization to remit such payments to the appropriate third parties. Nonetheless, out of an abundance of caution, by this Motion the Debtors request authorization to remit all outstanding prepetition amounts deducted on account of the Withholding and Deduction Obligations and to continue to deduct and remit the Withholding and Deduction Obligations on a post-petition basis in the ordinary course of business consistent with their prepetition practices.

**E.    Employer Payroll Taxes**

27.    In addition to the Withholding and Deduction Obligations described above, the Debtors are required by applicable statutory authority to match from their own funds Social Security taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment and disability insurance (the "<u>Employer Payroll Taxes</u>"), to the appropriate taxing authorities.

28.    The Debtors estimate that as of the Petition Date approximately $5,000 of accrued but unpaid Employer Payroll Taxes have not been remitted to the appropriate governmental authorities, all of which will become due and owing during the Interim Period. The Debtors seek authorization, but not direction, to remit the Employer Payroll Taxes and to continue to honor and

process the Employer Payroll Taxes on a post-petition basis in the ordinary course of business and consistent with past practices.

### F.    Reimbursable Expenses

29.    Certain ordinary course expenses that Employees incur in performing their job functions, including, but not limited to, expenses for parking, travel, business meals, and cell phone and internet (the "Reimbursable Expenses") are reimbursable by the Debtors.

30.    Certain Employees incur the Reimbursable Expenses personally. These Employees must apply for reimbursement by submitting an expense report and obtaining appropriate approval of the reimbursement. As of the Petition Date, the Debtors estimate that they owe approximately $20,000 on account of Reimbursable Expenses, some of which may be owed to employees terminated by the Debtors shortly before the Petition Date (the "Former Employees") and some of which may not yet have been submitted for reimbursement, and all of which will become due and owing during the Interim Period.

31.    The Debtors' inability to reimburse the Reimbursable Expenses could impose a hardship on Employees or Former Employees, as applicable, where such individuals incurred Reimbursable Expenses on the Debtors' behalf and with the understanding that such expenses would be reimbursed.  Accordingly, the Debtors seek authorization, but not direction, to continue to satisfy amounts incurred on account of the Reimbursed Expenses (including any prepetition amounts that may be outstanding) in the ordinary course of business on a post-petition basis.  For the avoidance of doubt, the Debtors will not seek to pay any outstanding amounts incurred on account of the Reimbursable Expenses in advance of the date they become due.

### G. PTO

32.     The Debtors provide paid time off for observed and floating holidays, vacation, sick leave, bereavement leave, time off to vote, jury duty, witness leave, parental wage replacement, and other, earned time off or time off necessary to comply with applicable law (collectively, the "PTO") to eligible Employees.

33.     In the event Employees have unused PTO at the end of a calendar year, amounts up to the accrual cap (240 hours) can be carried forward to the next calendar year. Once the accrual cap is reached, PTO will cease to accrue and will not begin to accrue again until PTO hours are used and are below the cap once more.

34.     These forms of compensation are usual, customary, and necessary if the Debtors are to retain qualified employees to operate their business. The current value of accrued and unused PTO is approximately $600,000. In the event of termination of an Employee, prepetition earned but unused PTO may become due and in accordance with applicable state law. Subject to the terms of the Interim and Final Orders, the Debtors seek authorization, but not direction to pay any prepetition amounts due with respect to earned but unused PTO and to continue their PTO policies in the ordinary course of business on a post-petition basis.

## II. Health and Welfare Coverage and Benefits

35.     The Debtors offer health and welfare benefits to eligible Employees for medical, dental, and vision coverage, and certain other welfare benefits, including life, disability insurance, and other insurance benefits (collectively, the "Health and Welfare Coverage and Benefits"). Failure to continue to honor the Health and Welfare Coverage and Benefits could cause Employees to experience severe hardship and make it difficult for the Debtors to retain the Employees.

36.     The Debtors assert that they are authorized to continue the Health and Welfare Coverage and Benefits in the ordinary course; however, out of an abundance of caution, the Debtors seek authorization, but not direction, to continue the Health and Welfare Coverage and Benefits on a post-petition basis in the ordinary course of business (including honoring any prepetition obligations that may be outstanding) and consistent with their prepetition practices.

### A.      Medical Coverage

37.     The Debtors offer their Employees and Employees' dependents medical insurance benefits through a choice of four (4) health insurance plan options, all of which are administered by Anthem Blue Cross of California ("Anthem" and collectively, the "Medical Plans"). Approximately 46 Employees are enrolled in the Medical Plans, under which participants and their eligible dependents receive coverage for, among other things, preventative care, doctor visits, hospital care, and prescription drugs.

38.     The Debtors contribute ninety percent (90%) of their Employees' premiums and eighty percent (80%) of their Employees' dependents' premiums under the Medical Plans, with the remaining amounts being deducted from participating Employees' paychecks. Premiums in respect of the Medical Plans are paid semi-monthly. As of the Petition Date, the Debtors estimate that they have accrued approximately $0.00 in the aggregate on account of the Medical Plans.

### B.      Dental and Vision Coverage

39.     The Debtors provide eligible Employees dental insurance coverage through a plan administered by Anthem (the "Dental Plan") and vision insurance coverage through a plan administered by Anthem (the "Vision Plan"). Approximately 50 Employees are enrolled in the Dental Plan and 51 Employees are enrolled in the Vision Plan.

40.    The Debtors contribute ninety percent (90%) toward payment of their Employees' premiums under the Dental Plan and eighty percent (80%) toward payment of their Employees' dependents' premiums under the Dental Plan, with the remaining amounts deducted from participating Employees' paychecks. Premiums in respect of coverage under the Dental Plan are paid semi-monthly. As of the Petition Date, the Debtors estimate that accrued and outstanding prepetition obligations related to the Dental Plan are $0.00.

41.    The Debtors likewise contribute ninety percent (90%) toward the payment of their Employees' premiums and eighty percent (80%) toward payment of their Employees' dependents' premiums in connection with the Vision Plan, with the remaining amounts deducted from participating Employees' paychecks. The Debtors estimate that accrued and outstanding prepetition obligations in connection with the Vision Plans as of the Petition Date are $0.00.

### C.    Flexible Spending Plans

42.    Eligible Employees have the opportunity to contribute to a variety of spending accounts funded with pre-tax dollars: (i) an Igoe Health Savings Account (the "HSA"), (ii) an Igoe Flexible Spending Account (the "Health Care FSA"), or (iii) an Igoe Dependent Care Flexible Spending Account (the "Dependent Care FSA" and together with the HSA and the Health Care FSA, the "Flexible Spending Plans").

43.    The HSA allows eligible Employees to make contributions to a personal, tax-free, interest-bearing savings account that can be used for healthcare expenses. The Debtors have agreed to make annual contributions of $500 to HSA accounts held by individual Employees and $1,000 to HSA accounts of eligible Employees and their dependents in 2024. All amounts owed in respect of the HSA accounts of eligible Employees have already been funded for fiscal year 2024 and the

Debtors do not believe any amounts in respect of the HSA accounts are owed as of the Petition Date.

44.     The Health Care FSA has a maximum annual contribution of $3,200 and can be used by eligible Employees to pay for medical expenses, dental expenses, and visions expenses not otherwise covered by the Employee's health insurance. The Dependent Care FSA has a maximum annual contribution of $5,000 and can be used by eligible Employees to cover the costs of daycare for children or home care for disabled family members.

45.     The Debtors deduct an average of approximately $4,000 from participating Employee's Wage Obligations on account of the Employee contributions to the Health Care FSA or Dependent Care FSA on a semi-monthly basis. Currently, approximately 9 Employees contribute to either the Health Care FSA or Dependent Care FSA. As of the Petition Date, the Debtors estimate that they have no outstanding obligations related to the Healthcare FSA or Dependent Care FSA.

### D.     COBRA Obligations

46.     Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), certain Former Employees of the Debtors (collectively, the "COBRA Participants") may continue insurance coverage under the Health Plans, the Dental Plan, the Vision Plan, the Flexible Spending Program and the Health Savings Account after the termination of their employment (the "COBRA Benefits"). COBRA Participants are entitled by law to receive COBRA Benefits for up to 18 months, and in certain instances, up to 36 months, after termination of their employment. Potential COBRA Participants are responsible for paying all premiums associated with the COBRA Benefits. The Debtors administer the COBRA Benefits, including providing all required notifications, billing and collecting premiums from the COBRA Participants,

coordinating enrollment information with the Health Plan Administrators, and providing customer service and support for COBRA Participants. The Debtors pay a monthly fee of two percent 2% of the COBRA Benefits on behalf of the participating individuals. The Debtors estimate that there are no accrued and outstanding prepetition obligations in connection with the COBRA Benefits as of the Petition Date.

47.     Failure to comply with the requirements of COBRA can subject the Debtors to penalties of up to $110 per day per qualified beneficiary (with a minimum penalty of $15,000 for more than *de minimis* violations), actions by the Department of Labor, and civil lawsuits by former employees to recover their benefits. *See, e.g.*, 29 C.F.R. § 2575.502c-6. Accordingly, the Debtors seek authorization, but not direction, to (i) continue to offer the COBRA Benefits in the ordinary course to eligible individuals, including to full-time Employees that become eligible post-petition, if any, and (ii) honor all related obligations post-petition in the ordinary course of business and consistent with their prepetition practices.

### E.     Life, Disability, and AD&D Insurance Coverage

48.     The Debtors provide or sponsor, as applicable, (a) basic life insurance, as well as accidental death and dismemberment insurance (the "Basic Life and AD&D Insurance") administered by Reliance Standard for eligible Employees; (b) an option for eligible Employees to purchase supplemental life insurance administered by Reliance Standard for themselves by paying a minimum of $10,000 annually, $5,000 annual minimum for spouses/domestic partners and $10,000 annual minimum for children for such coverage with after-tax dollars through payroll deductions (the "Supplemental Life Insurance"); and (c) short- and long-term disability insurance

to all active Employees (fully paid by the Debtors), which is administered by Reliance Standard ("Disability Insurance")[3] (collectively, the "Life, Disability, and AD&D Insurance Coverage").

49.     The Debtors' total monthly costs in connection with Disability Insurance coverage are approximately $7,000. As of the Petition Date, the Debtors believe that $0.00 is outstanding with respect to the Life, Disability, and AD&D Insurance Coverage. The Debtors request authority to continue honoring their obligations under the Life, Disability, and AD&D Insurance Coverage post-petition in the ordinary course of business and consistent with their prepetition practices.

### F.     Personal Mobile Phone and Internet Reimbursement

50.     The Debtors provide a flat rate reimbursement for (i) internet expenses incurred by remote Employees each pay period and (ii) personal mobile phone expenses incurred by Employees who are required to use their personal mobile phones for business purposes (the "Personal Mobile Phone and Internet Reimbursement").

51.     As of the Petition Date, the Debtors estimate that approximately $40,000 is accrued as a result of the Personal Mobile Phone and Internet Reimbursement, $40,000 of which will become due during the Interim Period. Additionally, the Debtors request authority to continue honoring their obligations under the Personal Mobile Phone and Internet Reimbursement in the ordinary course of business on a post-petition basis.

---

[3]     Disability Insurance for short-term disability provided by Reliance Standard is only available for the Debtors' Employees who do not reside in California. Employees in California who experience short-term disability are eligible for benefits provided by the state through the California State Disability Insurance ("SDI"), a state-mandated partial wage-replacement insurance program that is funded through employee payroll deductions. As of the Petition Date, the Debtors estimate that they are current with respect to the making of Employee payroll deductions related to SDI and do not request authority to pay any prepetition amounts owed in respect of SDI through this Motion. To comply with applicable state law, the Debtors do request authority to continue deducting for SDI as and when becomes necessary during the pendency of these chapter 11 cases on a post-petition basis in the ordinary course of business. For the avoidance of doubt, Employees who live outside California or California-resident Employees who experience long-term disability, utilize the Disability Insurance provided by Guardian.

### G.    Other Benefits

52.    The Debtors provide or sponsor, as applicable, a variety of miscellaneous other benefits for eligible Employees: (i) access to free, confidential assistance to help with personal or professional problems provided by Anthem if an Employee is enrolled in medical benefits or Reliance if not (the "Employee Assistance Programs"), (ii) the opportunity to earn up to $150 to complete various health activities from Reliance Standard (the "Reliance Wellness Program"), (iii) the opportunity to purchase legal insurance and will preparation services through ARAG (together, the "Legal Services Program"), (iv) the opportunity to purchase identity theft assistance through ARAG (the "Identity Theft Program"), and (v) a benefit for employees to purchase services/items at discounted rates and special offers through Independence (the "Employee Discount Program," and together with the Employee Assistance Programs, the Reliance Wellness Program, the Legal Services Program, the Identity Theft Program, the "Other Benefits").

53.    The Debtors' total monthly costs in connection with the Other Benefits are included in their existing cost to provide the Health and Welfare Coverage and Benefits. As of the Petition Date, the Debtors do not believe that any amounts are outstanding with respect to the Other Benefits. The Debtors request authority to continue honoring their obligations under the Other Benefits post-petition in the ordinary course of business and consistent with their prepetition practices.

### III.    Workers' Compensation Program

54.    The Debtors provide workers' compensation insurance for their Employees to cover, among other things, workers' compensation and employer liability for accidents, death, or disease sustained by employees in the course of their employment (the "Workers' Compensation Program"). The Debtors maintain workers' compensation insurance for their workers with

Travelers Property Casualty Company of America ("Travelers") and Travelers also handles administration of claims.  Marsh McClennan Agency ("Marsh") is the broker for the Debtors' Workers Compensation Program and Debtor DermTech, Inc. is the named insured thereunder.

55.     Payment is made to Marsh to satisfy the Debtors' obligations on account of payments under the Workers' Compensation Program. These premiums have historically been direct billed to the Debtors and paid in one annual installment.  For the period from November 1, 2023 through October 31, 2024, the Workers' Compensation Program premium was paid in full in the amount of $57,232.

56.     The Workers' Compensation Program is also subject to a regular audit that may result in an adjustment of the premium thereunder (the "Audit"). As such, to ensure that the Debtors are able to timely pay amounts that may be determined to be due and owing as a result of the Audit in the ordinary course of these chapter 11 cases, the Debtors request authority to pay any amounts that may become due and owing in respect of the Audit during these chapter 11 cases in the ordinary course and without the need for further court order.

## IV.     Employee 401(k) Plan

57.     As of the Petition Date, the Debtors maintain a retirement savings plan for the benefit of their full-time Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan"). Employees are eligible to participate in the 401(k) Plan upon the first month following their hire date. The 401(k) Plan is administered by Fidelity Investments, Inc. and allows for automatic pre-tax salary deductions of eligible compensation up to the limits set forth in the Internal Revenue Code. The 401(k) Plan's Trustee is Fidelity Management Trust Company.  The Debtors do not match eligible Employees' contributions to the 401(k) Plan and no relief related to the Employee 401(k) Plan is being sought pursuant to this Motion.

## V.    Retention Bonus Program

58.    The Debtors paid certain retention bonuses to Employees determined to be critical to the success of their strategic alternatives process in May 2024 and June 2024 (the "Retention Bonus Program"). As of the Petition Date, the majority of the bonuses paid under the Retention Bonus Program have already been paid in full and are generally subject to clawback upon the occurrence of certain specified events. However, one non-insider Employee may become entitled to a payment of up to approximately $25,000 under the Retention Bonus Program during the post-petition period. Subject to entry of the Final Order, the Debtors request the Court's authorization, but not direction, to honor and pay such amounts under the Retention Bonus Program.

## VI.    Wage, Benefit, and Employee Management Service Providers

59.    The Debtors work with one or more firms that handle human resources-related administrative functions, including payroll processing, withholding, remittance, reporting of payroll taxes (including the Employer Payroll Taxes) for the Employees, and the administration of their benefits and retirement plans and programs including claims processing and tax reporting (collectively, the "Employee Administration Service Providers").

60.    These relationships with the Employee Administration Service Providers allow the Debtors to realize substantial cost savings with respect to the administration of their employee payroll and benefits by not having to employ additional human resources personnel to administer payroll and benefit programs, and by allowing the Debtors to offer better and broader benefits to their Employees at significantly reduced rates relative to the costs of participating in those programs without third-party intermediaries like the Employee Administration Service Providers. The use of the Employee Administration Service Providers allows the Debtors' human resources personnel to manage the Debtors' workforce in an efficient and cost-effective manner and the

inability to use the systems and services provided by the Employee Administration Service Providers would significantly impair the ability of such personnel to perform their normal duties.

61.     As of the Petition Date, the Debtors estimate that they owe approximately $20,000 in the aggregate to the Employee Administration Service Providers, all of which will become due and owing during the Interim Period. The Debtors intend to continue to use the Employee Administration Service Providers during these chapter 11 cases and seek authorization, but not direction, to pay all outstanding prepetition amounts due to the Employee Administration Service Providers, to continue to make all payments in the ordinary course of business on a post-petition basis, and to continue their practice of evaluating and engaging or terminating Employee Administration Service Providers, as the case may be, in the ordinary course of business on a post-petition basis.

## BASIS FOR RELIEF

I.      **PAYMENT OF THE PREPETITION EMPLOYEE OBLIGATIONS IS APPROPRIATE UNDER SECTIONS 507(a)(4) AND 507(a)(5) OF THE BANKRUPTCY CODE.**

62.     The Debtors believe that a substantial portion of the amounts they seek to pay hereunder are entitled to priority pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code. Section 507(a)(4) of the Bankruptcy Code grants priority to Employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within 180 days before the Petition Date up to $15,150 per employee. 11 U.S.C. § 507(a)(4).  Similarly, section 507(a)(5) of the Bankruptcy Code provides the claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $15,150, less any amounts paid pursuant to Bankruptcy Code section 507(a)(4). *Id.* § 507(a)(5).

63.     Notably, to the extent necessary, the Debtors are seeking relief to make any payments on account of Wage Obligations above the priority cap of $15,150 pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code only on a final basis.  Because the vast majority of the Prepetition Employee Obligations the Debtors seek to pay hereunder (including all of the Prepetition Employee Obligations encompassed by the proposed Interim Order) constitute priority claims, the relief requested in herein affects only the timing of payment, and not the amount, and will not prejudice general unsecured creditors.

## II.     PAYMENT OF THE PREPETITION EMPLOYEE OBLIGATIONS IS APPROPRIATE UNDER THE DOCTRINE OF NECESSITY.

64.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when essential to the continued operation of a debtor's business.  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."

65.     Under the "doctrine of necessity," bankruptcy courts may authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor.  *In re Lehigh and New England Railway Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.,* 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been

paid"); *In re Just for Feet, Inc.,* 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third

Circuit, debtors may pay prepetition claims that are essential to continued operation of business);

*In re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

66.     Although the "doctrine of necessity" predates the Bankruptcy Code, *see*

*Miltenberger v. Logansport Ry. Co.,* 106 U.S. 286, 309 (1882), the modern application of the

doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections

105(a), 1107(a), and 1108. *See In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)

(fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan

satisfaction of a prepetition claim" where necessary to preserve going concern value).   The

doctrine, largely unchanged from the Court's reasoning in *Miltenberger,* is a widely accepted

component of bankruptcy jurisprudence. *See, e.g., Just for Feet, Inc.,* 242 B.R. at 826 (approving

payment of key inventory suppliers' prepetition claims when such suppliers could destroy the

debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season);

*Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.),* 80

B.R. 279, 285–86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages,

salaries, expenses and benefits).

67.     Paying the Prepetition Employee Obligations will benefit the Debtors' estates and

their stakeholders by allowing the Debtors' business operations to continue without interruption.

The Debtors believe that without the requested relief, it is probable that Employees at all levels of

the Debtors' organization would leave for alternative employment.   Such a development would

deplete the Debtors' workforce, thereby hindering the Debtors' ability to implement their chapter

11 strategy.   The loss of valuable Employees and the resulting need to recruit new personnel to

replenish the Debtors' workforce would be distracting and counterproductive at this critical

juncture.  Further, if the Debtors lose valuable Employees, they will incur significant expenses in locating, recruiting, and training replacements that may far exceed the costs of the Employee Compensation and Benefits for a lost Employee.  Indeed, the Debtors believe that if they do not pay the Prepetition Employee Obligations, the remaining Employees may become demoralized and unproductive because of the significant financial strain and other hardship many of the Employees will experience as a result.

68.     In light of the foregoing, the Debtors respectfully submit that the continuation of their Employee Compensation and Benefits and payment of the Prepetition Employee Obligations is essential to the success of these chapter 11 cases, represents an exercise of the Debtors' sound business judgment, and is in the best interests of the Debtors' estates, their creditors and all stakeholders.

## III.     SECTION 541 OF THE BANKRUPTCY CODE AUTHORIZES THE PAYMENT OF EMPLOYEE WITHHOLDING AND DEDUCTION OBLIGATIONS.

69.     A portion of the Prepetition Employee Obligations constitute funds held in trust for payment to third parties. The payment of the Employee Withholding and Deduction Obligations requested by this Motion will not prejudice the Debtors' estates because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 541(d); *Begier v. IRS*, 496 U.S. 53, 58–59 (1990). Further, failure to pay these amounts could subject the Debtors and their officers and directors to liability. *See, e.g.*, *In re Sheppard*, 253 B.R. 397 (Bankr. D.S.C. 2000) (officer responsible for a company not paying its federal employment tax liabilities found personally liable for such tax liabilities); *In re Geise*, 151 B.R. 432 (Bankr. N.D. Ohio 1992) (same); *see also* 26 U.S.C. § 6672(a) ("Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to . . . pay over such tax . . . shall, in

24

addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.").

70.     Because many of the Employee Withholding and Deductions Obligations are not property of the Debtors' estates, their application or payment for their intended purposes will not adversely affect the Debtors' estates or their creditors.  To prevent potentially irreparable harm to the morale of the Employees and, in certain cases, to comply with the clear and unambiguous requirements of section 541(b)(7) of the Bankruptcy Code, the Debtors desire to apply and remit the Employee Withholding and Deduction Obligations for the purposes for which the Withholdings and Deductions were taken.

## IV.    THE COURT SHOULD WAIVE THE AUTOMATIC STAY AS IT APPLIES TO WORKERS' COMPENSATION CLAIMS.

71.     Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).  Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

72.     The Debtors request authority under section 362(d) of the Bankruptcy Code to permit Employees to proceed with their workers' compensation claims in the appropriate judicial or administrative forum.  The Debtors believe that cause exists to modify the automatic stay because staying the workers' compensation claims could have a detrimental effect on the financial well-being and Employee morale and lead to the departure of certain Employees who are critical

at this juncture of the Debtors' restructuring efforts.  Such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

## V.      THE COURT SHOULD AUTHORIZE THE BANKS TO HONOR AND PROCESS PAYMENTS IN ACCORDANCE WITH THIS MOTION.

73.      The Debtors also request that the Court authorize and direct the Banks when requested by the Debtors, in their discretion, to receive, process, honor, and pay all checks or electronic fund transfers drawn on the Debtors' bank accounts presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to cover the checks and electronic fund transfers.  The Debtors also request that the Banks be authorized to rely on the Debtors' designation or representation that any particular check or electronic payment request has been approved pursuant to the Interim Order and the Final Order.

74.      The Debtors will have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid out except as authorized by this Court.  The Debtors therefore submit that the payment-processing procedures described in this Motion are appropriate.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

75.      The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003; *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed

by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The Debtors believe an orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested would disrupt the Debtors' operations and cause irreparable harm. The Employees would suffer significant hardship and some may immediately seek alternative employment opportunities if the relief requested herein is delayed, irreparably jeopardizing the viability of the Debtors' ongoing operations. Further, failure to receive the requested relief at the outset of these chapter 11 cases would disrupt the "business as usual" message that is critical to the Debtors' ability to stabilize their operations and maintain Employee confidence during this process. The Debtors submit that, for these reasons, among other reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

76. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **RESERVATION OF RIGHTS**

77. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or

amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

78.      The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the Internal Revenue Service; (e) the United States Securities and Exchange Commission; (f) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (g) banks and financial institutions where the Debtors maintain accounts; (h) all providers of services or benefits under this Motion; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors will serve copies of this Motion and any order entered in respect hereto as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order and

the Final Order, substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively,

granting the relief requested herein and such other and further relief as may be just and proper.

Dated: June 18, 2024      **WILSON SONSINI GOODRICH & ROSATI, P.C.**
   Wilmington, Delaware

           */s/ Catherine C. Lyons*
           Erin R. Fay (No. 5268)
           Shane M. Reil (No. 6195)
           Catherine C. Lyons (No. 6854)
           222 Delaware Avenue, Suite 800
           Wilmington, Delaware 19801
           Telephone: (302) 304-7600
           E-mails:  efay@wsgr.com
              sreil@wsgr.com
              clyons@wsgr.com

           - and -

           Benjamin Hoch
           Marsha Sukach (*pro hac vice* admission pending)
           1301 Avenue of the Americas, 40th Floor
           New York, New York 10019
           Telephone: (212) 999-5800
           Facsimile: (212) 999-5899
           E-mails:  bhoch@wsgr.com
              msukach@wsgr.com

           *Proposed Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| DERMTECH, INC., *et al.*,[1] | Case No. 24-11378 ([___]) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket No. ___** |

**INTERIM ORDER (I) AUTHORIZING
DEBTORS TO (A) PAY PREPETITION WAGES,
EMPLOYEE BENEFITS OBLIGATIONS AND OTHER COMPENSATION,
(B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED
ADMINISTRATIVE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of this interim order (the "Interim Order") and a final order:  (i) authorizing, but not directing, the Debtors, in their discretion, to (a) pay the Wage Obligations and related expenses arising under or related to the Employee Compensation and Benefits and (b) continue to provide their Employee Compensation and Benefits in effect as of the Petition Date (and as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time in the ordinary course of business) and pay related administrative obligations; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: DermTech, Inc. (0849) and DermTech Operations, Inc. (8997).  The Debtors' service address is 12340 El Camino Real, San Diego, California 92130.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and this Court having found that venue of these cases and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing on the Motion (the "Final Hearing") is set for _____ __, 2024 at __:__ a.m./p.m. (prevailing Eastern Time).  Any objections or responses to the entry of the proposed Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) seven (7) days before the Final Hearing, on _____ ___, 2024 (the "Objection Deadline"), and shall be served on the following parties or their respective counsel on or before the Objection Deadline: (a) proposed counsel to the Debtors, Wilson Sonsini Goodrich & Rosati, P.C., (x) 222 Delaware Avenue, Suite 800, Wilmington, Delaware 19801 (Attn: Erin R. Fay, Shane M. Reil, and Catherine C. Lyons (emails: efay@wsgr.com, sreil@wsgr.com, and clyons@wsgr.com)), and (y) 1301 Avenue of the Americas, 40th Floor, New York, NY 10019 (Attn: Benjamin Hoch and Marsha Sukach (emails: bhoch@wsgr.com and msukach@wsgr.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Room 2207, Wilmington, Delaware, (Attn: Linda J. Casey (email: (linda.casey@usdoj.gov)); and (c) counsel for any statutory

committee appointed in these chapter 11 cases.  If no objections or responses are filed and served

by the Objection Deadline, the Court may enter the Final Order without further notice or hearing.

3.      The Debtors are authorized, but not directed, in their discretion, to make cash

payments on account of the Prepetition Employee Obligations and related expenses arising under

or related to the Debtors' Employee Compensation and Benefits up to $405,000 in the aggregate

on an interim basis as set forth in the chart below; *provided, however*, that notwithstanding any

other provisions of this Interim Order, no payments to any Employee or Former Employee shall

exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code without

further order of this Court unless such excess is the result of cash payment for accrued and unpaid

PTO that is required to be paid under applicable state law.

| Prepetition Employee Obligation | Interim Caps | Final Amounts |
|---|---|---|
| Compensation, Withholding and Deductions, and Expense Reimbursement | | |
| Wage Obligations | $50,000 | $50,000 |
| Independent Contractor Obligations | $0.00 | $30,000 |
| Withholding and Deduction Obligations | $20,000 | $20,000 |
| Employer Payroll Taxes | $5,000 | $5,000 |
| Reimbursable Expenses | $20,000 | $20,000 |
| PTO | $250,000 | $600,000 |
| Health and Welfare Coverage and Benefits | | |
| Personal Mobile Phone and Internet Reimbursement | $40,000 | $40,000 |
| Retention Bonus Program | | |
| Retention Bonus Program | $0.00 | $25,000 |
| Wage, Benefit, and Employee Management Service Providers | | |
| Wage, Benefit, and Employee Management Service Providers | $20,000 | $20,000 |
| **TOTAL** | **$405,000** | **$810,000** |

4.      The Debtors are authorized, but not directed, in their discretion, to: (a) continue

their Employee Compensation and Benefits in effect as of the Petition Date and pay related

3

administrative expenses; and (b) to amend, renew, replace, modify, revise, supplement, or terminate such Employee Compensation and Benefits in the ordinary course of business.

5.      The Debtors are authorized, but not directed, in their discretion, to continue the Workers' Compensation Program and make any payments related thereto, including payment of any fees associated with the Workers' Compensation Program and any workers' compensation claim amounts, to the extent that the Debtors determine, in their discretion, that such actions are in the best interests of their estates.

6.      The Debtors are authorized, but not directed, in their discretion to perform as required in connection with any Audit related to their Workers' Compensation Program, including payment of any amounts determined to be owing and outstanding in respect thereof during the pendency of these chapter 11 cases, without the need for further order of the Court.

7.      Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

8.      The Debtors are authorized, but not directed, in their discretion, to: (a) continue utilizing Wage, Benefit and Employee Management Service Providers in connection with the provision of the Employee Compensation and Benefits described in the Motion and to pay or caused to be paid such claims as and when such obligations are due; and (b) pay prepetition amounts owing in the ordinary course of business to such Wage, Benefit, and Employee Management Service Providers in connection with the Employee Compensation and Benefits.

9. The Debtors are authorized to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients in accordance with the Debtors' prepetition practices and policies.

10. The Debtors are authorized to forward any unpaid amounts on account of Employer Payroll Taxes to the appropriate taxing authorities in accordance with the Debtors' prepetition practices and policies.

11. Notwithstanding anything to the contrary in the Motion, the Debtors shall not be authorized to pay any amounts subject to section 503(c) of the Bankruptcy Code pursuant to this Interim Order.

12. Nothing in this Interim Order nor any actions taken hereunder: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors; or (e) shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person. Any payment made pursuant to this Interim Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

13. The requirements of Bankruptcy Rule 6003 are satisfied.

14.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof and notice of the Motion as provided therein shall be deemed good and sufficient pursuant to the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

15.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

16.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

**<u>EXHIBIT B</u>**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>DERMTECH, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11378 ([___])<br><br>(Jointly Administered)<br><br>**Ref. Docket No. __** |

**FINAL ORDER (I) AUTHORIZING**
**DEBTORS TO (A) PAY PREPETITION WAGES,**
**EMPLOYEE BENEFITS OBLIGATIONS AND OTHER COMPENSATION,**
**(B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED**
**ADMINISTRATIVE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order and this final order (the "Final Order"):  (i) authorizing, but not directing, the Debtors, in their discretion, to (a) pay Prepetition Employee Obligations and related expenses arising under or related to the Debtors' Employee Benefits and Compensation and (b) continue their Employee Compensation and Benefits in effect as of the Petition Date (and as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time in the ordinary course of business) and pay related administrative obligations; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: DermTech, Inc. (0849) and DermTech Operations, Inc. (8997).  The Debtors' service address is 12340 El Camino Real, San Diego, California 92130.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and this Court having found that venue of these cases and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to make cash payments on account of the Prepetition Employee Obligations and related expenses arising under or related to the Employee Compensation and Benefits, including in respect of Former Employees, up to $810,000 in the aggregate on a final basis as set forth in the chart below; *provided, however*, that notwithstanding any other provision of this Final Order, no payment to any Employee or Former Employee shall exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code without further order of this Court, unless such excess is the result of (i) a cash payment for accrued and unpaid PTO or (ii) payments under the Retention Bonus Program authorized by this Final Order.

| Prepetition Employee Obligation | Approximate Amount Due on a Final Basis |
|---|---|
| Compensation, Withholding and Deductions, and Expense Reimbursement | |
| Wage Obligations | $50,000 |
| Independent Contractor Obligations | $30,000 |
| Withholding and Deduction Obligations | $20,000 |
| Employer Payroll Taxes | $5,000 |
| Reimbursable Expenses | $20,000 |
| PTO | $600,000 |
| Health and Welfare Coverage and Benefits | |
| Personal Mobile Phone and Internet Reimbursement | $40,000 |
| Incentive Compensation, Bonuses and Employee Stock Purchase Plan | |
| Retention Bonus Program | $25,000 |
| Wage, Benefit, and Employee Management Service Providers | |
| Wage, Benefit, and Employee Management Service Providers | $20,000 |
| **TOTAL** | **$810,000** |

3.    The Debtors are authorized, but not directed, in their discretion to:  (a) continue their Employee Compensation and Benefits in effect as of the Petition Date and pay related administrative expenses; and (b) to amend, renew, replace, modify, revise, supplement, or terminate such Employee Compensation and Benefits in the ordinary course of business.

4.    The Debtors are authorized, but not directed, in their discretion, to continue the Workers' Compensation Program and make any payments related thereto, including payment any fees associated with the Workers' Compensation Program and any workers' compensation claim amounts, to the extent that the Debtors determine, in their discretion, that such actions are in the best interests of their estates.

5.    The Debtors are authorized, but not directed, in their discretion to perform as required in connection with the Audit related to their Workers' Compensation Program, including payment of any amounts determined to be owing and outstanding in respect thereof during the pendency of these chapter 11 cases, without the need for further order of the Court.

6.       Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

7.       The Debtors are authorized, but not directed, in their discretion, to: (a) continue utilizing Wage, Benefit and Employee Management Service Providers in connection with the provision of the Employee Compensation and Benefits described in the Motion and to pay or caused to be paid such claims as and when such obligations are due; and (b) pay prepetition amounts owing in the ordinary course of business to such Wage, Benefit, and Employee Management Service Providers in connection with the Employee Compensation and Benefits.

8.       The Debtors are authorized to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients in accordance with the Debtors' prepetition practices and policies.

9.       The Debtors are authorized to forward any unpaid amounts on account of Employer Payroll Taxes to the appropriate taxing authorities in accordance with the Debtors' prepetition practices and policies.

10.       The Debtors are authorized, but not directed, to pay in the ordinary course any post-petition Non-Employee Director Fees.

11.       Nothing in this Final Order nor any actions taken hereunder:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall

impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors; or (e) shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.  Any payment made pursuant to this Final Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof and notice of the Motion as provided therein shall be deemed good and sufficient pursuant to the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

13.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.